```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

Vic's Super Service, Inc.,     :
Robert Cerritelli,             :
    Plaintiffs,                :
                               :
v.                             :    Case No. 3:04cv2146 (JBA)
                               :
City of Derby, Marc Garofalo,  :
Theodore Estwan,               :
    Defendants.                :
```

**RULING ON DEFENDANTS' MOTION TO DISMISS [DOC. # 38]
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT [DOC. # 37]**

Plaintiffs Vic's Super Service, Inc. ("Vic's"), owner of property located at 160 Elizabeth Street in Derby, Connecticut, and Robert Cerritelli, Vic's principal shareholder and operator of its service station business, brought this action against the City of Derby ("City"), former Derby Mayor Marc Garofalo, and Chairman of the Derby Planning and Zoning Commission ("Commission") Theodore Estwan, asserting violations of the Takings Clause of the United States Constitution, due process and equal protection violations, and a supplemental state common law claim for intentional infliction of emotional distress, in connection with the denial by the Commission of certain permit applications submitted by potential purchasers of the property at 160 Elizabeth Street. See Compl. [Doc. # 1]. Plaintiffs have since withdrawn their equal protection claim. See Pl. Opp. [Doc. # 53-1] at 1.

Defendants have moved to dismiss on the grounds that the

1

Court lacks subject matter jurisdiction over plaintiffs' federal claims as they are unripe for adjudication.  Alternatively, defendants seek summary judgment on the grounds that there is no genuine issue of material fact as to whether any of defendants' conduct caused any diminution in the value of plaintiffs' property or whether plaintiffs' property diminished in value to such an extent that they were deprived of all beneficial use thereof, there is no triable issue as to whether any of defendants' conduct was arbitrary and irrational, and there is no disputed issue of material fact as to whether any of defendants' conduct was extreme and outrageous sufficient to succeed on an intentional infliction of emotional distress claim.  See Def. Mot. [Docs. # 37/38].

For the reasons that follow, defendants' motion to dismiss for lack of subject matter jurisdiction will be granted because plaintiffs' federal claims are unripe for adjudication and, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over plaintiffs' state common law intentional infliction of emotional distress claim.

I.   **FACTUAL BACKGROUND**

The record reveals the following facts.[1]  Plaintiff

---

[1] As noted below, in resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may refer to evidence outside the pleadings, see Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000), and evidence concerning the Court's jurisdiction "may be presented by affidavit or otherwise." Kamen

Cerritelli operated a service station business at 160 Elizabeth Street for many years.  In the late 1990s, Cerritelli became ill with cancer, was not able to operate the business, and began to solicit purchasers for the property, which is located on the corner of Fifth and Elizabeth Streets in Derby, in an historic district diagonally across from the Birmingham Green and adjacent to municipal property on which the City Hall was located until May 2005.  The property is also located in the center downtown development district ("CDD") zone of the City and its use is therefore governed by Derby CDD zoning regulations, the purpose and intent of which include the preservation of historic buildings, the promotion of appropriate architectural and site design, and the provision of amenities which will encourage pedestrian use and enjoyment of the City center.  The Derby Planning and Zoning Commission, of which defendant Estwan is Chairman, at times relevant to this suit was comprised of seven members and two alternates appointed by the mayor with the approval of the Board of Aldermen.

In May 2003 Cerritelli located a potential buyer for his property, Artel Engineering Group, LLC ("Artel"), which submitted an application for a special exception use of the property as a Sunoco retail gasoline station and convenience mart.  The site plan included a station with three pumps, two entrances off

---

v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

Elizabeth Street and a curb cut on Fifth Street, along with an 18-foot high and 94-foot long Sunoco blue canopy.  Public hearings were held on June 17, 2003 and July 15, 2003, at which concerns were expressed about access, parking, and the size and color of the proposed canopy; suggestions were made to reduce the size of the canopy and change its color, and a revised site plan was contemplated.  The public hearing was continued to allow Artel to file a revised plan, but one was never filed.  Another hearing was held in August 2003, and ultimately on September 16, 2003, the Commission unanimously denied the application for the use proposed by Artel, referencing conflicts with various zoning provisions including provisions concerning the promotion of appropriate and compatible architectural and site design, the protection and enhancement of downtown development against congestion, the promotion of improvement to vehicular circulation patterns and reduction of curb cuts on main arteries, and the achievement of harmony with the comprehensive City plan and protection of public health, safety, and welfare; the Commission also found that the property was too small to support the activities associated with the number and location of the proposed fuel pumps.  The Commissions' decision was not appealed to the Derby Board of Appeals.

According to Cerritelli, in July and August 2003 defendants Estwan and Garofalo told him that the City wanted to purchase the

property, and that was why Artel's permit application was not approved, although Artel's application was not in fact denied until September 2003. The authority to purchase property on behalf of the City was exclusively held by the Derby Board of Aldermen. No proposal to purchase plaintiff's property was ever put on the Board of Aldermen's agenda, and the City never in fact purchased the property.

Subsequently, in September 2004, a second set of potential purchasers, Lewis and Patricia Marino, submitted an application for CDD site plan approval proposing to use the property at 160 Elizabeth Street as an oil delivery business. At a public hearing on October 19, 2004, concerns were also expressed about the nature of this proposed use and the Commission suggested reducing the number of proposed curb cuts, replacing the dilapidated sidewalk, and re-paving or replacing the pavement on the site that was in disrepair. No new or revised site plan was ever filed and on November 23, 2004, the Commission unanimously voted to deny the application on the basis that the site plan did not comply with the CDD zoning goals of providing amenities which would encourage pedestrian use and enjoyment, preserving the zone as the prime retail and service area, and protecting and enhancing the development in downtown against congestion. The Commission also found that the proposed use was overly dependent on truck traffic as a primary means of conducting business. No

appeal of the Commission's decision was ever filed.

In 2005, a third potential buyer submitted an application to the Commission for a permit to operate a used car dealership on the property, which was denied, and the record reveals that no appeal was ever filed.  Plaintiffs did not pursue any inverse-condemnation proceedings in state court related to any of the above described denials of use applications.

Plaintiffs now claim that these applications were denied because the City intended to buy the property, although it never did, and contend that they have been deprived of all beneficial use of their property, and have suffered violations of the Takings Clause and deprivation of due process as a result.

**II.   MOTION TO DISMISS STANDARD**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Motions under Rule 12(b)(1) "technically" should be raised before the filing of a responsive pleading. See Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 n.2 (9th Cir. 2004). However, under Rule 12(h)(3), the issue of the Court's subject matter jurisdiction may be raised at any time: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss

the action."  Fed. R. Civ. P. 12(h)(3).  "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.  For purposes of this case, the motions are analytically identical because the only consideration is whether subject matter jurisdiction arises."  Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992) (internal citation omitted).  Thus, the Court may consider defendants' motion in the present case "because the issue of jurisdiction can be raised any time during the proceedings."  Gonzalez v. Rubin, 225 F.3d 662 (9th Cir. 2000) (unpublished).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Makarova, 201 F.3d at 113 (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it.")).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may refer to evidence outside the pleadings."  Id.  Evidence concerning the Court's jurisdiction "may be presented by affidavit or otherwise."  Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

**III. RIPENESS**

    **A.   Standard**

Defendants challenge plaintiffs' federal claims on the basis that they are unripe for review in federal court. "Ripeness is a jurisdictional inquiry" because it "is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005).

The Supreme Court set forth the ripeness test for land use cases in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), which involved a Takings Clause challenge to a local planning commission's refusal to approve a subdivision in the form requested by a developer. The Supreme Court refused to uphold a jury verdict in the developer's favor because the developer had "not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property [and had] not utilized the procedures Tennessee provides for obtaining just compensation . . . ." Id. at 186. Thus, Williamson established a two-prong test in Takings Clause cases: first, because a plaintiff in a regulatory takings case must establish that he or she has "been denied all reasonable beneficial use of the property," the plaintiff must show that he or she has pursued all necessary steps to obtain a final determination from the relevant land use

8

authorities, including requesting variances, where available" (the "final decision" requirement). Id. at 190. Second, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation" (the "exhaustion" requirement). Id. at 195.[2]

The two-prong Williamson test has also been applied, inter alia, to substantive and procedural due process claims. See, e.g., Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83 (2d Cir. 2002) (procedural and substantive due process, as well as equal protection); Southview Assoc., Ltd. v. Bongartz, 980 F.2d 84 (2d Cir. 1992) (substantive due process).

As the Second Circuit clarified in Southview, however, with respect to "substantive due process claim(s) premised on

---

[2] Plaintiffs refer to the fact that as a general matter exhaustion of administrative remedies is not required in a case arising under 42 U.S.C. § 1983, and suggest that dicta in a concurring opinion in San Remo Hotel, L.P. v. City & Cty. of San Francisco, 125 S. Ct. 2491, 2508-09 (2005), calls into doubt whether Williamson was correctly decided. However, Williamson has never been overruled and until it is, this Court is obligated to follow its holding. See, e.g., JGA Development, LLC v. Charter Township of Fenton, Civ. 05-70984, 2006 WL 618881, at *4 (E.D. Mich. Mar. 9, 2006) (slip op.) (rejecting similar argument based on San Remo Hotel on grounds that Williamson is controlling). Further, even if the concurrence's dicta in San Remo Hotel could be interpreted as abrogating Williamson's exhaustion prong, as described below plaintiffs' cannot satisfy Williamson's final decision requirement, and thus plaintiffs' claims are not ripe for adjudication in any event.

arbitrary and capricious government conduct, . . . only the final decision prong of the Williamson ripeness test" applies.  980 F.2d at 96-97; see also Murphy, 402 F.3d 349 (explaining that the second prong of the ripeness requirement "stems from the Fifth Amendment's proviso that only takings without just compensation infringe that Amendment" and, accordingly, where the absence of just compensation is not implicated, such as in a substantive due process claim premised on arbitrary and capricious government conduct, only the final decision ripeness prong applies).  Such claims are distinguished from claims that the state has taken its police powers "too far" in regulating land use, thus allegedly depriving a plaintiff of all economically beneficial use of his property, which are subject to both prongs of the Williamson ripeness test.  Id.

   The plaintiff in Southview challenged a decision of environmental permitting authorities, upheld by the Vermont Supreme Court, denying an application to develop a certain portion of forested land near a ski mountain.  The decision, however, left open other portions of the lot to development.  The plaintiff alleged a regulatory takings claim as well as a substantive due process claim premised on arbitrary and capricious action by Vermont regulators.  The Second Circuit held that the "arbitrary and capricious government conduct" claim was not ripe because Southview ha[d] not yet submitted alternative

proposals for consideration," and "[u]nless a court has a final decision before it, it cannot determine . . . whether the government conduct was arbitrary or capricious." Id. at 97 (internal citation omitted).

Relying on Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992), the Second Circuit in Southview also recognized a futility exception to the final decision rule.  980 F.2d at 98. This exception was reiterated in Murphy, 402 F.3d at 349, which held that "a property owner need not pursue [appeal or variance] applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied."

**B. Final Decision**

As the Second Circuit has explained, four considerations "undergird [Williamson's] prong-one ripeness." Murphy, 402 F.3d at 348.

> First . . . requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record.  Second, and relatedly, only if a property owner has exhausted [all remedies] will a court know precisely how a regulation will be applied to a particular parcel.  Third [the appeal] might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes . . . Finally, since Williamson County, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

Id.  "In sum, absent a futility or remedial finding, prong-one ripeness reflects the judicial insistence that a federal court know precisely how a property owner may use his land before attempts are made to adjudicate the constitutionality of regulations purporting to limit such use."  Id. at 349; accord MacDonald, Sommer & Frates v. Yolo Cty., 477 U.S. 340, 349 (1986) (holding that analysis of effect of a zoning commission's application of zoning ordinances on the value of an owner's property and investment-backed expectations "cannot be measured until a final decision is made as to how the regulations will be applied to [the owner's] property").

This requirement has not been met here because revised plans addressing the Commission's concerns about each proposed use were never filed and no appeals of the Commission's determinations were taken, and it thus remains uncertain how the CDD zoning regulations will be applied to various uses of plaintiffs' property and whether applications for all conceivable uses would be denied.  See Williamson, 473 U.S. at 187 (noting that in Penn Central Transp. Co. v. City of N.Y., 438 U.S. 104, 136-37 (1978), application of certain regulations did not constitute a taking where the property owners had not sought approval for alternative plans and it was not clear whether the Commission would deny approval for all uses that would enable the plaintiffs to derive economic benefit from the property, noting that New York City law

did not interfere with the way the property was being used at the
time, and holding that there was no final decision sufficient for
ripeness purposes because neither the property owner nor the
prior owner/developer sought a variance from the zoning
ordinances); accord Southview, 980 F.2d at 98-99 (holding
plaintiff's taking and due process claims unripe where developer
failed to explore other development possibilities or submit
alternative proposals to the zoning board and it was thus "not
clear whether the Board [would] deny approval for all uses that
would enable the plaintiff[] to derive economic benefit from the
property"); Celentano v. City of W. Haven, 815 F. Supp. 561, 569
(D. Conn. 1993) (holding that plaintiff failed to satisfy the
final decision prong of Williamson where he never filed an
application to change the zoning designation on his property,
never attempted to obtain a variance, and withdrew a site plan
for a different use on his property).³

---

³ Plaintiffs' contention that Williamson is inapposite to
this case because defendants denied the applications of others
related to alternative uses of the property must be rejected
because, regardless of the applicant, there is no final decision
from which it is clear how the zoning applications as a whole
will be applied to plaintiffs' property and whether all
conceivable uses will be prohibited; indeed, the service station
business Cerritelli operated on the property is apparently a use
that will be permitted.  Notwithstanding that potential
purchasers filed applications, rather than plaintiffs themselves,
after denial plaintiffs could have filed new or revised plans for
the proposed alternative uses and, if those were denied, they
could have appealed those decisions to the Derby Board of
Appeals.  They failed to do so and thus there is no reviewable
final decision.

Although plaintiffs mistakenly address their futility argument to the Williamson exhaustion prong, it is appropriately directed to the final decision prong, and the thrust of the argument is that submission of revised site plans or institution of appeals of the Commission's decisions would have been futile because the reason the permits were denied was because the City intended to purchase the land.  However, plaintiffs have not demonstrated that such further administrative action would have been futile.  While they focus on comments made to Cerritelli in the summer of 2003 by defendants Garofalo and Estwan that the City wanted to buy the property, these comments alone are insufficient to establish that re-submission, plan revision, or appeal would have been futile.  First, the Commission's decisions, as described above, were tied to specific zoning objectives and provisions.  While plaintiffs argue the reasons given were pretextual, the Commission's decision was unanimous and only Estwan – one of the seven-member Commission – expressed an intent that the City purchase plaintiffs' property, and thus it is possible that if the Commission's concerns had been addressed, an alternative use might have been approved.  See Southview, 980 F.2d at 99 (rejecting futility argument where it was possible to infer from the Board's decision that it would be receptive to an alternative proposal addressing the Board's concerns).

14

Additionally, the statements by Garofalo and Estwan were made to Cerritelli before the first (Artel) application was denied, and more than a year before the denials of the two subsequent applications, during which time it was decided that the Derby City Hall would be relocated from property adjacent to plaintiffs' property to a location 2 blocks away, potentially eliminating the City's desire or need to purchase plaintiffs' property for City purposes.  Further, even if Estwan's hope that the City would purchase plaintiffs' property influenced the Commission's decisions (although there is no indication that it did), there is no evidence suggesting that determination of an appeal taken to the Derby Board of Appeals would have been made on any ground other than compliance with the zoning objectives and requirements.  Accordingly, plaintiffs have failed to demonstrate futility of filing new, revised, or alternative use applications, or of appealing the Commission's denials of the applications made.

**C.    Exhaustion**

The exhaustion requirement is premised on the fact that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Williamson, 473 U.S. 194.  "Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain

15

and adequate provision for compensation exist at the time of the taking." Id. Thus, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195.  Thus, where a so-called "inverse condemnation action" is available to a property owner, a takings claim is premature. Id. at 196 (finding a takings claim premature where applicable state law provided that a property owner could bring an inverse condemnation action to obtain just compensation for an alleged property taking, including for recovery where the taking is effected by restrictive zoning laws or development regulations, stating "[r]espondent has not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature").

    Notwithstanding that plaintiffs did not themselves submit the rejected use applications to the Commission, they did not pursue an inverse condemnation claim available to them under Connecticut law.  Plaintiffs' contention that "[t]he suggestion that [they] should have brought an inverse condemnation action is fanciful as the plaintiffs here do not contend that the government has in fact taken their property, a necessary element of such an action," Pl. Opp. at 6, appears to be based on a misunderstanding of the nature of an inverse condemnation claim,

which does not in fact require a physical taking of the property at issue.[4] Under Connecticut law, "[a]n inverse condemnation claim accrues when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding. . . . Accordingly, an inverse condemnation action has been aptly described as an eminent domain proceeding initiated by the property owner rather than the condemnor." AEL Realty Holdings, Inc. v. Bd. of Representatives of the City of Stamford, 82 Conn. App. 613, 620-21 (Conn. App. Ct. 2004). Accordingly, "[f]or inverse condemnation to occur, property does not have to be appropriated by governmental action to the extent that no value remains. It is sufficient if use of property is severely restricted and its profitability greatly reduced as a result of the action of the government." Id.; accord Citino v. Redevelopment Agency of the City of Hartford, 51 Conn. App. 262, 277 (Conn. App. Ct. 1998) ("Inverse condemnation occurs when

---

[4] Plaintiffs' statement could be construed as a disclaimer of their federal claims because they suggest they have not been deprived of any property, see Pl. Opp. at 6 (plaintiffs "merely contend that the defendants have expressed an interest in purchasing the property for town use, and are interposing regulatory obstacles in the paths of third parties seeking to purchase the property. The Government has not in fact taken the property; it merely has made it unattractive for others to take it and prevented a terminally ill man from selling it by denying the potential [buyers] permits they require to use the land"). Because plaintiffs' meaning is unclear, the Court instead interprets this statement as a misunderstanding of the requirements for an inverse condemnation claim.

there has been a taking, without compensation, for a public purpose, <u>without an actual or physical appropriate of property</u>.") (emphasis added).[5]

As noted above, plaintiffs' futility argument is inapplicable to the exhaustion prong of <u>Williamson</u>, because the futility exception applies only to <u>Williamson</u>'s final decision requirement. See <u>Southview</u>, 980 F.2d at 98; see also <u>Cumberland Farms, Inc. v. Town of Groton</u>, 247 Conn. 196, 207-08 (Conn. 1998) ("[Whereas] [a] plaintiff's administrative appeal serves the remedial purpose of reviewing the propriety of the board's decision, . . . in an inverse condemnation action, a plaintiff alleges that a regulatory action constitutes a taking for constitutional purposes and seeks compensation for the alleged taking. An inverse condemnation action does not concern itself with the propriety of the board's action. The only inquiry is

---

[5] See also <u>Chevron Oil Co. v. Zoning Bd. of Appeals of the Town of Shelton</u>, 170 Conn. 146, 151 (Conn. 1976) ("Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a practical confiscation, the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner."); <u>D'Addario v. Planning & Zoning Comm'n of the Town of Darien</u>, 25 Conn. App. 137, 143 (Conn. App. Ct. 1991) ("A trial court employs a balancing test in determining whether a taking has occurred. . . . That balancing test requires that the trial court consider (1) the degree of diminution in value of the particular piece of property, (2) the nature and degree of the public harm to be prevented and (3) the realistic alternative uses available to the landowner.").

whether a taking has, in fact, occurred.  If the board's action resulted in a taking, the inverse condemnation action will determine the amount of compensation due.").

### D. Due Process

As described above, see supra Pt. III.A, both Williamson requirements are applicable to plaintiffs' first due process theory that they were deprived of all beneficial use of their land; only the final decision requirement is applicable to plaintiffs' second theory based on alleged arbitrary and capricious conduct.  Because plaintiffs have failed to satisfy either of the Williamson requirements, their due process claims must also be dismissed as unripe for adjudication.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Having dismissed plaintiffs' federal claims for lack of subject matter jurisdiction, the Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over plaintiffs' remaining state common law claim of intentional infliction of emotional distress.  See Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998) ("28 U.S.C. § 1367(c)(3) . . . permits a district court, in its discretion, to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims.  Further, the Supreme Court, in Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988), announced that when all federal claims

are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice.").

**V.   CONCLUSION**

For the foregoing reasons, defendants' Motion to Dismiss [Doc. # 38] is GRANTED, and their Motion for Summary Judgment [Doc. # 37] is accordingly DENIED as moot.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 24th day of August, 2006.**